Mr. E. R. Roon State Purchasing Director Division of Purchasing Department of Administration 712 State Services Building Denver, Colorado 80203
Dear Mr. Roon:
QUESTION PRESENTED AND CONCLUSION
Does section 5(2) of article VIII of the Colorado Constitution exempt institutions of higher education from the operation of C.R.S. 1973, 17-24-111(1), requiring purchase of goods and services from correctional industries?
 My conclusion is that the Correctional Industries Act applies to all institutions of higher education.
ANALYSIS
You have asked for an opinion concerning the applicability of Senate bill No. 587 (1977) to institutions of higher education, such as the University of Colorado. In particular, S.B. 587 creates under the "Correctional Industries Act" (Article 24 of title 17, C.R.S. 1973), a division of correctional industries. Two of the statutory powers of this new division (in addition to providing work programs for able-bodied inmates) are —
 To utilize the labor services of prisoners in the manufacture or production of goods and services that are needed for the construction, operation, or maintenance of any office, department, institution, or agency supported in whole or in part by the state, . . . .
 To sell all goods and services, including capital construction items, produced by the programs to agencies supported in whole or in part by the state, any political subdivision of the state, or the federal government; See C.R.S. 1973, 17-24-106(1)(e) and (f)
Further, C.R.S. 1973, 17-24-111(1) requires that "(t)he state and its institutions, agencies, and departments shall purchase through the state purchasing agent or central purchasing agency authorized by section 24-30-402(2)(a), C.R.S. 1973, such goods and services as are produced by the division."
The basic issue raised by your inquiry is whether section 5(2) of article VIII of the Colorado Constitution exempts institutions of higher education from the operation of section 17-24-111(1) and the duty to purchase goods and services produced by the division of correctional industries. Based upon the following analysis, it is my opinion that the Correctional Industries Act applies to all institutions of higher education.
Section 5 of article VIII of the Colorado Constitution was amended in 1972 (Laws 1972, p. 644). Among other changes, the following paragraph (2) was added:
 The governing boards of the state institutions of higher education, whether established by this constitution or by law, shall have the general supervision of their respective institutions and the exclusive control and direction of all funds of and appropriations to their respective institutions, unless otherwise provided by law.
This amendment repealed section 13 of article IX, which provided:
 The board of regents shall have the general supervision of the university, and the exclusive control and direction of all funds of, and appropriations to, the university.
One of the primary effects of this constitutional amendment was to grant control of all funds and appropriations to the governing boards of state institutions of higher education, unlessotherwise provided by law. The issue to be decided is whether the requirements of the Correctional Industries Act fall within the meaning of the phrase "unless otherwise provided by law."
One must look for guidance to the case of AssociatedStudents of the University of Colorado v. Regents of theUniversity of Colorado, et al., Colo. 543 P.2d 59 (1975). In that case the Board of Regents had adopted a rule providing for closed meetings of the board under certain circumstances. The Open Meetings Law of the Colorado Sunshine Act provides in part that "All meetings of two or more members of any board . . . or other policy making body of any state agency or authority . . . are declared to be public meetings." The court held that the Open Meetings Law did not fall within the phrase "unless otherwise provided by law," and thus did not apply to the Regents, reasoning that:
 This phrase operates so that any qualification of the constitutional grant is to be construed as divesting the supervision and control granted only when a legislative enactment expressly so provides . . . . This phrase refers to the provisions of particular and special applicable laws. . . .
It should be noted that the court found that the Open Meetings Law would infringe upon the Regent's authority to govern the university because the application of the law would invalidate a law of the Regents. Here, no rule or law of the Regents exists which would conflict with the requirements of the Correctional Industries Act, specifically C.R.S. 1973, 17-24-111. Thus, there is a serious question as to whether the reasoning and holding of the Regents case is herein applicable. Assuming, for future guidance, that the board were to adopt a rule exempting the board from the requirements of 17-24-111, its validity would be doubtful in view of the provisions of S.B. 76 (Laws 1976, p. 583) which provides in part that:
 (8)(a) No rule shall be issued except within the power delegated to the agency and as authorized by law. A rule shall not be deemed to be within the statutory authority and jurisdiction of any agency merely because such rule is not contrary to the specific provisions of a statute. Any rule or amendment to an existing rule issued by any agency, including state institutions of higher education administered pursuant to title 23, C.R.S. 1973, which conflicts with a statute shall be void.
Even assuming the applicability of the Regents decision to the present issue, it is my opinion that language contained in the Correctional Industries Act makes it sufficiently specific to fall within the phrase "unless otherwise provided by law." As already noted above, C.R.S. 1973, 17-24-106(1)(e) expressly applies to any "office, department, institution, or agency supported in whole or in part by the state . . . ." C.R.S. 1973, 17-24-111(1), quoted above, applies to the "state and itsinstitutions, agencies, and departments . . . ." Additionally, by section 17-24-111(1) requiring institutions to purchase correctional industries' goods and services through the state purchasing agent or "central purchasing agency authorized by section 24-30-402(2)(a), C.R.S. 1973," the legislature's intent to include institutions of higher education within the term "institutions" is made apparent. C.R.S. 1973, 24-30-402(2)(a) specifically recognizes that "educational institutions," among others, may be authorized by the governor to purchase their supplies, materials, etc. through a central purchasing agency under procedures prescribed by the state purchasing agent. Thus, the references to "institutions" in the context of the Correctional Industries Act and C.R.S. 1973, 24-30-402(2)(a) are sufficient indication of legislative intent to apply the Act to institutions of higher education to meet the requirements of the Regents decision.
SUMMARY
Based upon the foregoing, it is my opinion that the requirements of the Correctional Industries Act (Article 24 of title 17, C.R.S. 1973) apply to institutions of higher education and specifically to the duty thereof to comply with the purchasing requirements of C.R.S. 1973, 17-24-111.
Very truly yours,
 J.D. MacFARLANE Attorney General
EDUCATION, HIGHER CORRECTIONAL FACILITIES STATE AGENCIES
C.R.S. 1973, 17-24-101 et seq. C.R.S. 1973, 24-30-402
Colo. Const. art. VIII, § 5
ADMINISTRATION, DEPT. OF Purchasing, Div. of HIGHER EDUCATION, DEPT. OF
Institutions of higher education are covered by the Correctional Industries Act requiring institutions of the state to purchase certain goods and services.